STATE OF NEBRASKA, APPELLEE, V. VERONICA A. CANIGLIA,
APPELLANT.
510 N.W.2d 372

Filed April 13, 1993.   No. A-92-413.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

MILLER-LERMAN, Judge.

Appellant, Veronica A. Caniglia, was convicted at a bench trial of possession of a controlled substance, a Class IV felony, see Neb. Rev. Stat. § 28-416(3) (Reissue 1989), and sentenced to 1 year's imprisonment in the Nebraska Center for Women. Caniglia brings this appeal asserting the trial court erred by (1) denying her motion to suppress physical evidence obtained as a result of a warrantless search of Caniglia's makeup purse and (2) admitting the evidence obtained as a result of the warrantless search at trial. See State v. Schwartz, 239 Neb. 84, 474 N.W.2d 461 (1991). Caniglia asserts that the search of her makeup purse was carried out without her consent and in violation of the Fourth Amendment of the Constitution of the United States and article I, § 7, of the Constitution of Nebraska.

For the reasons recited below, we reverse the rulings of the trial court and remand the cause.

## FACTS

This case arose out of the stop of a van in which Caniglia was a passenger. The van was stopped on August 19, 1991, by two Omaha police officers in response to a radio call regarding a van prowling in the area of 63d and Sahler Streets in Omaha. Following the stop, one of the police officers received the consent of William Sickler, the driver, to search the van. In the course of the search, the police found a blue makeup purse under the passenger seat of the van where Caniglia had been sitting. Controlled substances were found in the makeup purse. Caniglia filed a motion to suppress. The motion to suppress was limited to the controlled substances found inside Caniglia's makeup purse during the search.

A suppression hearing was held on November 26, 1991. Officer Thomas Muller was the sole witness who testified at the suppression hearing. Officer Muller testified that he and Officer Shane Farrow stopped the van in which Caniglia was a passenger following a radio call regarding a yellow van with Iowa license plates prowling in the area of 63d and Sahler Streets. The stop occurred shortly after midnight. Officer Farrow requested identification from the male driver while Officer Muller requested identification from the female passenger, Caniglia. Caniglia did not have any identification, and she gave Officer Muller a name which proved to be fictitious. After obtaining the correct identification of both parties, Officer Farrow explained the reason for the stop to the driver and asked the driver, who was also the owner of the van, if the officer could search the van. The driver consented to the search. While Officer Farrow sought the driver's consent and proceeded to search the van, Officer Muller questioned Caniglia. Officer Muller testified that Officer Farrow discovered a makeup purse under the passenger seat where Caniglia had been sitting. According to the arrest report prepared by Officers Farrow and Muller, which is in evidence, "Officer Farrow was searching the vehicle and found on the floor of the passenger side a blue make up bag which contianed

[sic]" controlled substances. The property report, also in evidence, refers to item No. 9 as being "1 blue make up bag, misc. items." Under the heading entitled "Remarks," the property report reads: "All items found in a blue make up bag which was located under seat she was sitting in." Officer Farrow did not obtain Caniglia's consent prior to searching her makeup purse. Caniglia was subsequently charged with possession of a controlled substance. The driver of the van was not. The trial court denied the motion to suppress.

Caniglia waived her right to a jury trial, and the case was submitted for trial to the bench on February 14, 1992. The matter was submitted to the trial court based essentially on various police reports which were offered as exhibit 1 at the trial. At trial, Caniglia renewed her objection to the admission of evidence procured from the search. The objection was overruled, and the evidence was received for consideration by the court. The trial court found appellant guilty of possession of a controlled substance and imposed a sentence of 1 year's imprisonment in the Nebraska Center for Women at York.

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992), *cert. denied* No. 92-916, 1992 WL 370064 (U.S. Mar. 22, 1993); *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992); *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992); *State v. Masat*, 239 Neb. 849, 479 N.W.2d 131 (1992); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992).

In deciding whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *State v. Pope, supra*; *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992).

The U.S. Supreme Court has addressed the constitutional validity of third-party consent in the Fourth Amendment context on various occasions. Although the Supreme Court has placed restrictions on the admissibility of evidence obtained pursuant to consent given by a third party, it has not considered

a case directly on point. In *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), the Court held that the consent to search given by a third party is valid if the consent was "obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." However, the Supreme Court has specifically held that officers must act reasonably in their belief that a person consenting to a search has the authority over the property to be searched to give valid consent. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990). Cf. *U.S. v. Ruiz*, 935 F.2d 982 (8th Cir. 1991) (holding that the consent to search given by a third party was valid where the defendant owner had abandoned his ownership interest).

Nebraska case law regarding the scope of a third party's consent to search a vehicle is limited. As in *Matlock*, the Nebraska Supreme Court has held that third-party consent to a search is valid when "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *State v. Van Ackeren*, 194 Neb. 650, 657, 235 N.W.2d 210, 215 (1975) (citing *United States v. Matlock, supra*; *Frazier v. Cupp*, 394 U.S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (1969)). In *Van Ackeren*, the defendant's girl friend consented to the search of her vehicle. The search revealed a suitcase containing property belonging to both the defendant and his girl friend. Evidence obtained during the search was used against the defendant at trial. The fact that the suitcase in *Van Ackeren* was used by and contained clothing belonging to both the defendant and his girl friend for a trip they expected to take together was viewed as giving the girl friend common authority over or a sufficient relationship to the suitcase and was an important factor in the decision approving the search.

The case at bar is distinguishable from *Van Ackeren* because Caniglia's makeup purse was not an item which police officers could reasonably believe belonged to a male driver or which a male driver would possess a sufficient relationship to or common authority over. The item searched was not of an ambiguous character, and indeed, Officer Muller described the item discovered as a makeup purse, which he referred to during

the suppression hearing variously as a "make-up purse" and "make-up kit." According to the police reports and the officer's testimony, Caniglia's makeup purse was found under the passenger seat "she was sitting in" and was consistently associated with her. Based on this record, under *Illinois v. Rodriguez, supra,* the officers did not reasonably believe that the makeup purse belonged to the driver or that he had authority over the property. The driver was not charged with possession of a controlled substance.

In *State v. Zachodni,* 466 N.W.2d 624 (S.D. 1991), a South Dakota highway patrol trooper performed a search of a truck after receiving consent from the driver, John Zachodni. The trooper searched Linda Zachodni's purse without obtaining her consent and found marijuana. The South Dakota Supreme Court held that a husband does not "have common authority or joint control over his wife's purse." *Id.* at 628. The court noted that it would have been "unreasonable" for the trooper to believe otherwise. *Id.* Similarly, in the instant case, it would have been unreasonable for the officers to believe that the driver had common authority or joint control over Caniglia's makeup purse. See *State v. Zachodni, supra.*

## CONCLUSION

A careful review of the record in the case at bar shows that the driver did not have a sufficient relationship to or common authority or joint control over Caniglia's makeup purse to give a valid consent for the search. The officers could not reasonably have believed Caniglia's makeup purse was the property of the male driver, the makeup purse did not contain the driver's belongings, and the record does not support the proposition that Caniglia had abandoned her makeup purse.

Since the officers failed to obtain Caniglia's consent prior to searching her makeup purse, the motion to suppress the evidence obtained in the unlawful search should have been granted. Thus, the decisions of the trial court denying the motion to suppress and overruling the objection to the evidence obtained from the search at trial were clearly erroneous and are, therefore, reversed, and the cause is remanded.

REVERSED AND REMANDED.